# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JESSICA ZUK                                    :

       Plaintiff,                           :

    v.                                        :    Case No. 1:23-cv-00294 JMC

WASHINGTON METROPOLITAN                        :
AREA TRANSIT AUTHORITY,
                           :

       Defendant.


## PLAINTIFF'S OPPOSITION TO
## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036
─────────
202-463-3030

i

## Table of Contents

I.  **Relevant Factual Background**                                                           **1**

    A.  WMATA bus driver attempts aggressive pass within inches of cyclist (in violation of law and WMATA's own Standard Operating Procedures), hits cyclist.................................. 1

    B.  Contrary to WMATA's representations in its Motion, at the time the bus began to pass Ms. Zuk, she was already in the lane the bus wished to be in. ............................. 3

    C.  The WMATA bus driver's attempt to blow past a cyclist with only inches to spare violated not only explicit District of Columbia traffic laws, but also explicit WMATA Standard Operating Procedures. ........................................................................ 5

    D.  When its bus driver first hit Ms. Zuk, WMATA knew exactly whose fault it was: WMATA's.6

II.  **Legal Standard**                                                                       **8**

III.  **WMATA has not met its burden of proving contributory negligence as a matter of law on the basis of purported violations of either of the only two bicycle laws it cites: 18 DCMR § 1201.3 and 18 DCMR § 1201.13.**          **8**

    A.  WMATA has not proven as a matter of law that Ms. Zuk violated 18 DCMR § 1201.3. ......... 8

    B.  WMATA has not proven as a matter of law that Ms. Zuk violated 18 DCMR § 1201.13. ........ 9

IV.  **WMATA has not met its burden of proving contributory negligence as a matter of law on the basis of a violation of motor vehicle laws.**          **11**

    A.  An Initial Note Regarding Applicability of the Motor Vehicle Laws WMATA Relies Upon. 11

    B.  WMATA is not entitled to summary judgment on the basis of its argument that Ms. Zuk violated 18 DCMR § 2201.6(a). .......................................................................... 12

    C.  WMATA is not entitled to summary judgment on the basis of its argument that Ms. Zuk violated DC Code § 50-1731.04. ......................................................................... 13

        1.  DC Code § 50-1731 applies only to drivers of motor vehicles, not to cyclists. .................... 14

        2.  Alternatively, even if D.C. Code § 50-1731.04 were to be applied to cyclists, Ms. Zuk did not violate D.C. Code § 50-1731.04(a) because she was not "using" her phone when the Metrobus hit her and even if she was, WMATA itself concedes that her phone was equipped with a hands-free accessory. .................................................................. 17

        3.  Alternatively, even if D.C. Code § 50-1731.04 were to be applied to cyclists, Ms. Zuk did not violate D.C. Code § 50-1731.04(c) because she was not "using" her earbuds when the Metrobus hit her. ............................................................................ 18

V.  **To whatever extent WMATA requests that the Court declare Ms. Zuk contributorily negligent as a matter of law on common-law principles rather than due to alleged statutory or regulatory violations, WMATA's motion should still be denied.**          **20**

VI.  **Alternatively, even if the Court were to find Ms. Zuk to have been contributorily negligent as a matter of law, it would not be appropriate to engage in the weighing of the parties' relative negligence that is the province of the jurors.**          **21**

VII.  **Conclusion**                                                                          **23**

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036
——————————
202-463-3030

## I.    Relevant Factual Background

### A.    *WMATA bus driver attempts aggressive pass within inches of cyclist (in violation of law and WMATA's own Standard Operating Procedures), hits cyclist.*

On April 24, 2022, a WMATA bus driver watched a young woman, Jessica Zuk, ride her bicycle through an intersection directly in front of him. (Ex. 1, Forward Facing Camera, at 12:43:13-12:43:21). To any reasonable driver, it was obvious that she was proceeding forward through the intersection. Rather than follow behind her until he might pass her safely, WMATA's bus driver gunned the bus and tried to blow past her, leaving only inches between the bus and her body, on the far side of the intersection. (Ex. 1 at 12:43:21). As the Metrobus rapidly bore down on the cyclist from behind, the bus driver did not sound his horn or do anything else to let the cyclist know the bus was there. (Ex. 5, Morgan Dep., at 55:2-5).

WMATA's bus driver misjudged. Instead of blowing past her, he hit her, knocking her to the ground and nearly crushing her under the bus's back tires. (Ex. 3, Curbside Rearward Camera, at 12:43:13-12:43:33).

The Metrobus's forward-facing front camera and rear-facing passenger-side camera captured the event; the following two short clips include the relevant portions:

 

Ex. 1 at 12:43:10-12:43:21                    Ex. 3 at 12:43:10-12:43:33

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

1

By the time Ms. Zuk could have seen the bus enter her peripheral vision, it was too late—there was nothing she could do to avoid being hit by the bus.  As expert safety engineer and crash reconstructionist Justin P. Schorr, Ph.D., explained:

> While the Metrobus operator had 36 seconds to view Ms. Zuk, the Metrobus did not become a hazard to Ms. Zuk until the bus was in motion and within her field of view. Here, the earliest opportunity Ms. Zuk had to view the bus (albeit in her peripheral vision) would have been approximately 1.0 seconds prior to impact when the front of the bus was approximately aligned with her torso (timestamp 12:43:21.40, Channel 3). Given that this is less time than a typical daytime perception plus reaction time (1.5 seconds), Ms. Zuk, or any reasonably prudent cyclist, would not have been provided sufficient time and distance to perceive and react to (let alone avoid) the hazard created by the bus.

(Ex. 9, Schorr Report, at 2).

Ms. Zuk suffered severe injuries including the following: concussion; sprained wrist; triangular fibrocartilage complex ("TFCC") tear; bruising and abrasions spread over body; strains of cervical muscle, fascia, and tendons; muscle atrophy and weakness; and a left shoulder superior labrum anterior to posterior ("SLAP") tear.  (*See generally* Pl.'s Expert Designation).  Both the TFCC tear and the SLAP tear have required surgical repair; even with those surgeries, Ms. Zuk faces a lifetime of pain and permanent deficits.

### B. Contrary to WMATA's representations in its Motion, at the time the bus began to pass Ms. Zuk, she was already in the lane the bus wished to be in.

Critically, one of the key "facts" underpinning Defendant's Motion is just plain wrong.

Defendant contends as follows:



> 10.    The front of the Metrobus passed her completely while she remained
>
> outside the lane as seen below at 12:43:21 in Camera 3:

(Def.'s SUMF No. 10).  But that is just not true.  In the video frame immediately before the one WMATA chose to present to the Court, Ms. Zuk's front tire is visible, and it is plainly **in** the traffic lane.[1]  In the photos below, the blue arrow tracks the bottom of Ms. Zuk's tire (in other words, where on the roadway her bike was), while the red box shows the white line dividing the parking lane from the travel lanes:

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

---

[1]    Plaintiff does not mean to suggest that the choice of frames was <u>intended</u> specifically to mislead the Court, only that its effect is to mislead.



(Ex. 2). For orientation purposes, this white dividing line is also shown in a red box in the

following frame, which is from the bus's front-facing camera:



(Ex. 1 at 12:43:21). In sum, when the front of the Metrobus passes her, Ms. Zuk is already in the lane she is in when the bus hits her a moment later. (To say nothing of the fact that even in the seconds leading up to that point it would have been obvious to a reasonable bus driver that Ms. Zuk intended to continue forward in the lane in question.)

**C. The WMATA bus driver's attempt to blow past a cyclist with only inches to spare violated not only explicit District of Columbia traffic laws, but also explicit WMATA Standard Operating Procedures.**

18 DCMR § 2202.10 requires as follows: "A person driving a motor vehicle shall exercise due care by leaving a safe distance, but in no case less than 3 feet, when overtaking and passing a bicycle." 18 DCMR § 2202.10. WMATA's own bus operation Procedures—specifically, Procedure 25, "Sharing the Road with a Bicyclist"—require the same, with even greater, explicit detail:

> **6.6. Passing A Bicyclist (Figure 25-4)**
>
> 6.6.1. A bicyclist is permitted to occupy the entire width of the lane just as any motor vehicle would.
>
> 6.6.2. Never attempt to pass a bicyclist in the same lane.
>
> 6.6.3. When it is necessary to pass a bicyclist, the operator <u>must change lanes and maintain three feet clearance while passing, (use more clearance if needed)</u> and approach the bicyclist with extreme caution.
>
> 6.6.4. Protect the cyclist and do not create space that would allow another vehicle to come between the bus and the cyclist.
>
> 6.6.5. If cyclist speeds up or moves towards the bus, slow down and/ or stop if necessary.

(Ex. 7, WMATA Procedures, at § 6.6 (bold in original; underlining added)). WMATA Procedure BTRA-BTOP-PRO06-00, "Changing Lanes, Passing, and Being Passed," also requires that when a Metrobus driver intends to attempt to pass another vehicle (which

WMATA has testified includes both cyclists and motor vehicles[2]), the bus driver is instructed as follows: "Tap the horn as you pass the vehicle to warn the driver you intend to pass." (Ex. 7 at § 6.4.1).

Here, as summarized above (*supra,* Sec. I.A), WMATA's own CCTV footage proves that the cyclist was already in the lane when the bus began to fly past her. By initiating his pass with only perhaps a few inches of clearance (and, obviously, zero inches at contact), WMATA's bus driver violated 18 DCMR § 2202.10. It should also be noted that the regulation does not care which lane either vehicle is in—no matter what, the passing motor vehicle must afford the cyclist a clearance that is **safe** under the circumstances, and **never less than three feet.** WMATA's bus driver violated WMATA's own Bus Procedure 25.6.6 for the same reason. And by not sounding his horn to alert the cyclist, WMATA's bus driver violated WMATA Bus Procedure 6.6.4.1, as well.

### D.   When its bus driver first hit Ms. Zuk, WMATA knew exactly whose fault it was: WMATA's.

In the immediate aftermath of the collision, Metro Transit Police Officer Syreeta Jackson responded to the scene. As Officer Jackson documented in her report:

- A neutral eyewitness (a bus passenger) said the bus hit Ms. Zuk: "She stated that as the bus was passing the bicyclist, he (the driver) hit her causing her to fall. The witness stated that she saw the bicyclist head hit the bus before falling."

- Ms. Zuk said the bus hit her: "I then met with the bicyclist who advised she was riding her bike on the 1300 block of U Street when the bus contacted her handlebars causing it to wobble. She was [not] able to regain control and she fell onto the bus hitting her head then to the ground."

- The bus driver claimed Ms. Zuk was trying to pass the bus and she ran into the bus: "I met with the Bus Operator who advised he was traveling on U

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

---

[2]     Ex. 8, WMATA Dep. (Coppage) at 18:6-19:5.

> Street and passed the bicyclist.  The bicyclist then tried to pass him and ran into the bus."

Because the bus driver's story conflicted with that of Ms. Zuk and the neutral eyewitness, Officer Jackson pulled the bus's CCTV footage, which put the debate to rest.  She summarized the obvious—the bus's CCTV footage showed that the bus had hit Ms. Zuk, and not the other way around:

- "A review of the video showed both the bicyclist and Bus 4488 stopped at a red light eastbound on 14th Street at the intersection of U Street NW.  The bicyclist was in front of the bus.  The light changed green and the bicyclist proceeded through, traveling on the left side of parked cars (there is no dedicated bike lane).  The bus began passing the bicyclist and the bus rear door area contacted the bike at 1356 U Street NW.  The contact caused the bicyclist to fall."

(Ex. 4, MTPD Report, at 5[3]).

And it is not only the Metro Transit Police Department that recognized that WMATA's bus driver bore the blame for hitting Ms. Zuk; WMATA knew it, too.  In possession of all necessary information—including, most obviously, the Metrobus's CCTV footage—WMATA suspended the bus driver for three days as a disciplinary measure for his having struck Ms. Zuk.  (Ex. 5 at 55:10-13).

---

[3]     In its Reply, WMATA may be tempted to argue that at her deposition, Officer Jackson was prepared to disown the conclusions she reached in the course and scope of her job (as a law enforcement officer working to ascertain and document what had happened) and instead support WMATA's litigation-based arguments.  If so, Plaintiff would point out that her epiphany occurred only after a lengthy meeting with WMATA's counsel during which he walked her through the video footage and WMATA's intent to blame the victim in this case.  But Plaintiff is disinclined to brief this at present due to the delicate nature of the issues and the fact that it is not believed that WMATA intends to rely in any manner on opinions Officer Jackson arrived at for purposes of this litigation (and it would be improper to attempt to rely on such opinions for the first time in a reply brief, anyway).

## II.    Legal Standard

Summary judgment is only proper if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56 requires more than the existence of a factual dispute, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A dispute is 'genuine' only if a reasonable fact-finder could find for the non-moving party; a fact is only 'material' if it is capable of affecting the outcome of the litigation." *Defenders of Wildlife v. Jewell*, 68 F. Supp. 3d 193, 202 (D.D.C. 2014) (citing *Anderson*, 477 U.S. at 247). On summary judgment, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III.   WMATA has not met its burden of proving contributory negligence as a matter of law on the basis of purported violations of either of the only two bicycle laws it cites: 18 DCMR § 1201.3 and 18 DCMR § 1201.13.

### A.    WMATA has not proven as a matter of law that Ms. Zuk violated 18 DCMR § 1201.3.

As a first purported basis for contributory negligence, WMATA asks the Court to find as a matter of law that Ms. Zuk violated 18 DCMR § 1201.3(a) or (b).  (Def.'s MSJ at 6). WMATA does not explain **how** it contends Ms. Zuk violated the regulation.  But even on its face, on the plain language of the regulation, it is clear that it does not govern even WMATA's own desired characterization of the subject events.

18 DCMR § 1201.3 regulates the manner in which bicyclists are to "overtake and pass another vehicle" (as phrased in subsection (a)) or "overtake and pass other vehicles" (subsection (b)).  18 DCMR § 1201.3.  But WMATA never so much as **argues** in its Motion

that Ms. Zuk was "overtaking and passing" the Metrobus.  And, as shown by the video, it hardly could advance such an argument in good faith.  In reality, Ms. Zuk was not overtaking and passing a vehicle at the time the Metrobus hit her; rather, as is apparent from the video footage, it was the Metrobus that was overtaking and passing Ms. Zuk.[4]  Elsewhere in its Motion, WMATA itself acknowledges this fact.[5]  Not having even argued that the facts of the case fit within the language of the regulation, WMATA cannot have met its burden of proving an entitlement to summary judgment.

### B.    WMATA has not proven as a matter of law that Ms. Zuk violated 18 DCMR § 1201.13.

As a second purported basis for contributory negligence, WMATA asks the Court to find as a matter of law that Ms. Zuk violated 18 DCMR § 1201.13, which provides as follows: "No person operating a bicycle . . . shall ride into the path of a vehicle that is so close that it is not possible for the driver to yield." (Def.'s MSJ at 6 (quoting 18 DCMR § 1201.13)).  As with its first argument, WMATA provides no analysis or argument on the topic, but presumably,[6] WMATA intends to argue that Ms. Zuk rode into the path of the Metrobus when it was so close that it was not possible for the bus driver to yield.  As much as WMATA might like to **argue** that Ms. Zuk "rode into the path of" the Metrobus, as outlined above, (*supra*, Sec. I), that is not what happened.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

---

[4]    Ironically enough, the parallel instruction for motor vehicles is the one that the jury should be instructed on at trial: 18 DCMR § 2202.2 ("The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left of the vehicle at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.").

[5]    *See, e.g.*, Def.'s MSJ at 8 n.1 ("the instant fact patten where a vehicle overtakes a bicyclist").

[6]    Although it might be noted that it is not incumbent upon the opposing party (or the Court) to guess at the movant's summary judgment arguments.

9

As shown on WMATA's own video, a WMATA bus driver watched a young woman, Jessica Zuk, ride her bicycle through an intersection directly in front of him.  (Ex. 1 at 12:43:13-12:43:21).   To a reasonable bus driver, it was obvious that she was proceeding forward through the intersection.  Rather than follow behind her until he might pass her safely, WMATA's bus driver gunned his bus and tried to blow past her, leaving only inches between the bus and her body, on the far side of the intersection.  (Ex. 1 at 12:43:21).  As the Metrobus rapidly bore down on the cyclist from behind, the bus driver did not sound his horn or do anything else to let the cyclist know the bus was there.  (Ex. 5 at 55:2-5).

WMATA's bus driver misjudged.  Instead of blowing past her, he hit her, knocking her to the ground and nearly crushing her under the bus's back tires.  (Ex. 3 at 12:43:13-12:43:33).  Through his actions, WMATA's bus driver violated not only District of Columbia traffic laws, but also WMATA's own bus operation procedures.

For purposes of Defendant's Motion, it is enough to note that there remains a genuine dispute of material fact on this topic.  Plaintiff believes the video and other evidence proves that the events unfolded as summarized in the preceding two paragraphs.  If WMATA wishes to argue that its desired characterization—that Ms. Zuk rode into the path of a bus under circumstances where it was impossible for the bus driver to yield—is a better one, it may do so, but it must direct that argument to the jurors, not the Court.  Defendant's argument that Ms. Zuk violated 18 DCMR § 1201.13 implicates at least four separate questions of fact: (1) whether the cyclist really "rode into the path of" the bus; if so, (2) how close the bus was to the cyclist at that time, (3) when a reasonable driver he should yield to the bicyclist, and (4) whether at that time it was indeed impossible for the bus driver to avoid the collision.  Those are questions of material fact that are genuinely disputed.  (Perhaps most obviously: Plaintiff's

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

position is that any reasonable bus driver would have been aware of and taking proper

precautions for the cyclist from the moment he first accelerated the bus into the intersection.)

They are questions for the jurors.  WMATA cannot have met its burden of proving an

entitlement to summary judgment on the basis of 18 DCMR § 1201.13.

## IV.    WMATA has not met its burden of proving contributory negligence as a matter of law on the basis of a violation of motor vehicle laws.

### A.    An Initial Note Regarding Applicability of the Motor Vehicle Laws WMATA Relies Upon

WMATA argues as follows:

> Moreover, in the absence of a specific regulation pertaining to a bicyclist in the District of Columbia, a bicyclist has the same duties as a motor vehicle operator under the District of Columbia Municipal Regulations. *See* D.C. Mun. Regs. tit. 18, § 1201.1 ("Every person who … rides a bicycle on a highway shall have the same duties as any other vehicle operator under this title ….").

(Def.'s MSJ at 6).  But WMATA's second ellipsis is doing some heavy lifting.  In full, the

regulation provides as follows:

> 1201.1 Every person who propels a vehicle by human power or rides a bicycle on a highway shall have the same duties as any other vehicle operator under this title, **except as otherwise expressly provided in this chapter, and except for those duties imposed by this title which, by their nature or wording, can have no reasonable application to a bicycle operator.**

(18 DCMR § 1201.1 (omitted language bolded)).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

### B. WMATA is not entitled to summary judgment on the basis of its argument that Ms. Zuk violated 18 DCMR § 2201.6(a).

18 DCMR § 2201.6(a) provides as follows:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all other rules consistent with this subtitle shall apply:

> (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that such movement can be made with safety;

18 DCMR § 2201.6(a).  As noted above, this is not a lane-change case; it is a reckless passing case.  (*See supra*, Secs. I, III).  It is a case about a bus driver who had a perfect view of the bicyclist ahead of him, owed a duty to respect her safety and follow the rules of the road, but instead chose to try to blow past her with a recklessly narrow margin of error and wound up hitting her.  But setting that aside, for the purposes of the instant Motion, it is enough to note that (1) on its face, the regulation does not govern the subject events and (2) even if it did, it would require a fact-intensive inquiry by the jurors, not the Court.

On its face, 18 DCMR § 2201.6(a) does not apply to the facts of this case.  By its own language, it applies only "[w]herever any roadway has been divided into two (2) or more clearly marked lanes for traffic."  18 DCMR § 2201.6(a).  The only place WMATA contends (or **plausibly** contends, anyway[7]) Ms. Zuk was not proceeding "as nearly as practicable entirely within a single lane" is while she bicycled through the intersection.  The intersection is not "divided into two (2) or more clearly marked lanes for traffic" as required by the regulation:

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

---

[7]    *See supra*, Sec. I.B (observing that WMATA's argument that Ms. Zuk was ever in the wrong lane by the time she cleared the intersection and the bus began passing her is irrefutably belied by the video evidence).



(Ex. 1 at 12:43:08).

Even if 18 DCMR § 2201.6(a) **were** deemed to apply to the facts of this case, Defendant still would not be entitled to summary judgment through it, because it demands a determination whether the vehicle in question (here, Ms. Zuk's bicycle) was "driven as nearly as practicable entirely within a single lane."    What defines "practicable" under the circumstances?    The practicability of lane maintenance, and therefore compliance with the regulation, is an inherently factual determination; accordingly, it is the domain of the jurors at trial, not the Court on a summary-judgment motion.

### C.    WMATA is not entitled to summary judgment on the basis of its argument that Ms. Zuk violated DC Code § 50-1731.04.

Finally, WMATA argues that the Court should find Ms. Zuk contributorily negligent as a matter of law because as a result of alleged violations of D.C. Code § 50-1731.04(a) or

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

13

(c).  (Def.'s MSJ at 7).  Those subsections bar persons from (1) using a mobile phone while operating a motor vehicle and (2) using earbuds in both ears while operating a motor vehicle, respectively.  WMATA's argument fails for several reasons.

### 1.  DC Code § 50-1731 applies only to _drivers_ of _motor vehicles_, not to cyclists.

#### a.  WMATA's "hook," 18 DCMR 1201.1, does not impose upon bicyclists a duty to comply with regulations drafted for only "_motor_ vehicles," as opposed to all "vehicles."

A certain foundational mistake in WMATA's argument should be addressed at the outset.  WMATA argues as follows:

> Moreover, in the absence of a specific regulation pertaining to a bicyclist in the District of Columbia, a bicyclist has the same duties as a **motor vehicle** operator under the District of Columbia Municipal Regulations. _See_ D.C. Mun. Regs. tit. 18, § 1201.1 ("Every person who … rides a bicycle on a highway shall have the same duties as any other **vehicle** operator under this title ….").

(Def.'s MSJ at 6 (emphasis added)).  In so arguing, WMATA conflates the term "vehicle" with "motor vehicle."  No doubt the result of oversight rather than an intentional effort to mislead, but the result is no less fatal to WMATA's argument.

In Title 18 of the District of Columbia Municipal Regulations (of which § 1201.1, in which WMATA grounds its argument) the terms "motor vehicle" and "vehicle" mean different things:

> **Motor Vehicle** -- any vehicle propelled by internal-combustion engine, electricity, or steam, including any non-operational vehicle that is being restored or repaired. The term "motor vehicle" shall not include road rollers, farm tractors, vehicles propelled only upon stationary rails or tracks, electric personal assistive mobility devices, and battery-operated wheelchairs

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

14

when operated by a handicapped person at speeds not exceeding 10 miles per hour.

\*\*\*

**Vehicle** -- any of the following:

(a)  A motor vehicle or trailer;

(b)  An appliance moved over a highway on wheels or traction tread including draft animals and beasts of burden.

18 DCMR § 9901 (emphasis in original).  According to those definitions, "vehicle" is an exceptionally broad term, but "motor vehicle" encompasses only a much smaller subset of "vehicles"—those propelled by internal-combustion engine, electricity, or steam.  A bicycle is a "vehicle," but it is not a "motor vehicle."  Accordingly, 18 DCMR § 1201.1 imposes on bicyclists the duties owed by operators of **all vehicles**, but it does not go so far to impose upon bicyclists the duties owed by a separate subclass, "motor vehicles."

### b.  By their nature and wording, the duties set forth in D.C. Code § 50-1731 can have no reasonable application to a bicycle operator.

D.C. Code § 50-1731 bears the short title, "Distracted Driving Safety Act of 2004." D.C. Code § 50-1731.01.  In relevant part, its purpose was described as follows: "to enhance **driving** safety by establishing distracted **driving** standards and allowing mobile telephones to be used while operating a moving **motor vehicle** only when equipped with **built-in speakers** or a hands-free accessory."  DISTRACTED DRIVING SAFETY ACT OF 2004, 2004 District of Columbia Laws 15-124 (Act 150-311) (emphasis added).  The use of the word "driver" offers a hint that the statute was not intended to govern bicycles; the exception for "built-in speakers" offers another—while cell phones can connect to built-in speakers in cars, bicycles do not have built-in speakers (to the knowledge of the undersigned, at least).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

15

The Distracted Driving Safety Act does not provide its own specific definition of "motor vehicle."  *See* D.C. Code § 50-1731.02, "Definitions" (no definition).  Elsewhere in Title 50, though, definitions of "motor vehicle" cannot reasonably be read to include bicycles, and some exclude them fairly specifically.  For example:

> **"Motor vehicle" means all vehicles propelled by internal-combustion engines, electricity, or steam. The term "motor vehicle" shall not include** traction engines, road rollers, vehicles propelled only upon rails or tracks, electric mobility devices, personal mobility devices, **motorized bicycles** or a battery-operated wheelchair when operated by a person with a disability.

D.C. Code § 50-2201.02(11); *see also* D.C. Code § 50-1108 (nearly verbatim);

> **The term "motor vehicle" means all vehicles propelled by an internal-combustion engine, electricity, or steam. The term "motor vehicle" shall not include** traction engines, road rollers, vehicles propelled only upon stationary rails or tracks, personal mobility devices, as the term is defined in § 50-2201.02(13), electric mobility devices, as the term is defined in § 50-2201.02(6A), **motorized bicycles**, as the term is defined in § 50-2201.02(11A), or a battery-operated wheelchair when operated by a person with a disability.

D.C. Code § 50-2301.02(5A);

> "Motor vehicle" means any automobile, mobile home, motorcycle, truck, truck tractor, trailer, semi-trailer, or bus. **The term "motor vehicle" shall not include** any boat trailer, **any vehicle propelled or drawn exclusively by muscular power**, any vehicle designed to run only on rails or tracks, a personal mobility device, as the term is defined in § 50-2201.02(13), electric mobility devices, as the term is defined in § 50-2201.02(6A), **motorized bicycles**, as the term is defined in § 50-2201.02(11A), or a battery-operated wheelchair when operated by a person with a disability.

D.C. Code § 50-601(6) (emphasis added).  If not even a **motorized** bicycle qualifies as a "motor vehicle," then an un-motorized one certainly does not.

Because the wording of D.C. Code § 50-1731 makes clear that it applies only to drivers of motor vehicles, not to bicyclists, it is not swept up into the catchall language of 18 DCMR § 1201.1 as Defendant argues it should be.  To the contrary, its "nature and wording" make clear that it "can have no reasonable application to a bicycle operator" such as Ms. Zuk, and it is therefore excluded from the catchall by the exclusionary language WMATA chose to omit from its presentation of 18 DCMR § 1201.1.  (*See supra*, Sec. IV.A).

> ### 2.   *Alternatively, even <u>if</u> D.C. Code § 50-1731.04 were to be applied to cyclists, Ms. Zuk did not violate D.C. Code § 50-1731.04(a) because she was not "using" her phone when the Metrobus hit her and even if she was, WMATA itself concedes that her phone was equipped with a hands-free accessory.*

D.C. Code Ann. § 50-1731.04(a) prohibits the following:

> (a) No person shall **use** a mobile telephone or other electronic device while operating a moving motor vehicle in the District of Columbia unless the telephone or device is equipped with a hands-free accessory.

D.C. Code § 50-1731.04(a) (emphasis added).  In short, it prohibits the **use** of a mobile phone while operating a motor vehicle.  But WMATA has not even argued—and has no factual basis from which to argue—that Ms. Zuk was **using** her phone; to the contrary, in its Motion, every single time WMATA even approaches the topic, it can assert only that Ms. Zuk was **"holding"** the phone.  (Def.'s MSJ at 1 ("holding a cell phone"), 3 (same), 7, (same), 8 (same), SUMF ¶ 14 (same)).  And it makes sense to prohibit the use of a phone but not the holding of a phone—using a phone might well distract a motor vehicle driver (the danger the statute was meant to prevent), but holding one is no different from holding the same size deck of cards.

Because Defendant has not even alleged (and cannot in good faith) that Ms. Zuk was "using" her cell phone at the time the Metrobus hit her, even if the Court were to deem a

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

bicycle to be a motor vehicle and the Distracted Driving Safety Act of 2004 to therefore apply, Defendant still would not have met its burden of proving that Ms. Zuk had as a matter of law violated D.C. Code § 50-1731.04(a).

Finally, it bears mentioning that even if (1) a bicycle were deemed a motor vehicle and (2) Defendant had alleged (and proven) that Ms. Zuk was using a cell phone at the time the Metrobus hit her, its argument would still fail, because using a cell phone while operating a motor vehicle does not violate D.C. Code § 50-1731.04(a) as long as the cell phone is "equipped with a hands-free accessory," and Defendant's own motion repeatedly alleges that Ms. Zuk's cell phone was linked to her earbuds.

### 3. Alternatively, even _if_ D.C. Code § 50-1731.04 were to be applied to cyclists, Ms. Zuk did not violate D.C. Code § 50-1731.04(c) because she was not "using" her earbuds when the Metrobus hit her.

D.C. Code Ann. § 50-1731.04(c) prohibits the following:

> (c) No person shall **use** headphones that cover both ears or earbuds in both ears while operating a motor vehicle in the District, except if the headphones or earbuds are being used to assist a hearing-impaired driver.

D.C. Code § 50-1731.04(c) (emphasis added). In short, as with cell phones, the Act prohibits the **use** of earbuds while operating a motor vehicle. Here, it is undisputed that Ms. Zuk was not actually **using** her earbuds at the time the Metrobus hit her:

> Q. Incidentally -- just another question -- when you were operating your bike that day, did you by any chance have any AirPods in your ear?
>
> A. I had an AirPod in my ear, yes, but I was not listening to any music. I was on my way home so I wasn't listening to anything at that moment. But I did have an AirPod in, I believe, my right ear.
>
> Q. Your right ear. What about your left ear?

A. I believe I was wearing both, but I know that one of them fell out during the collision.

Q. Okay. But prior to the collision, you had AirPods in both ears?

A. Yes.

Q. And was that to listen to music?

**A. Typically, yes. But on my journey, I had received a phone call a little bit earlier on. So at that moment, I was not listening to music.**

**Q. Okay. Were you talking?**

**A. No.**

**Q. At the time of the collision, were you talking on your -- were you talking at the time of the collision?**

**A. Not to my recollection. I wasn't on the phone.** So hopefully not chatting with myself, but you never know. But no, not to my recollection. No chatting.

**Q. The reason I ask the question is -- what I'm trying to get at is, there would have been nothing to impair your ability to hear on the day in question -- of the accident, correct?**

**A. Just outside of the normal sounds of the city. That was probably what I was hearing.**

(Ex. 10, Zuk Dep. at 14:6-15:17).

Because the evidence is undisputed that Ms. Zuk was **not** "using" her earbuds at the time the Metrobus hit her, even if the Court were to deem a bicycle to be a motor vehicle and the Distracted Driving Safety Act of 2004 to therefore apply, Defendant still would not have met its burden of proving that Ms. Zuk had as a matter of law violated D.C. Code § 50-1731.04(c).

## V. To whatever extent WMATA requests that the Court declare Ms. Zuk contributorily negligent as a matter of law on the basis of common-law principles rather than alleged statutory or regulatory violations, WMATA's motion should still be denied.

It is not entirely clear whether WMATA limits its request for judgment in its favor to the alleged statutory/regulatory violations discussed above or whether WMATA is also asking the Court to weigh WMATA's argument against the standard of common-law reasonableness. If the latter, WMATA's Motion should be denied on that front, as well.  As WMATA itself observes, the Court may hold a plaintiff contributorily negligent as a matter of law only where "reasonable persons . . . can draw but one inference from the facts, and there that one inference points unerringly to the conclusion that the plaintiff failed to act reasonably under the circumstances."  (Def.'s MSJ at 4 (quoting *Phillips v. Fujitec Am., Inc.*, 3 A.3d 324, 330 n.16 (2010).  This Court has also described the calculus as follows:

> The court therefore denies [defendant's] motion for summary judgment. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450 n. 12 (stating that "the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment in negligence cases"); *Gracyalny v. Westinghouse Elec. Corp.,* 723 F.2d 1311 (7th Cir. 1983) (stating that, "[i]n negligence cases, questions concerning the reasonableness of the parties' conduct, foreseeability and proximate cause particularly lend themselves to decision by a jury. Thus, summary judgment is rarely appropriate in negligence cases") (internal citations omitted); *Brandstetter v. National R.R. Passenger Corp.,* 1987 WL 25664, *4 n.4 (D.D.C. 1987) (stating that "[i]ssues of conformity with applicable standards of care, proximate cause and foreseeability are peculiarly fact-specific and contextual, and invariably concern considerations of reasonableness and credibility of evidentiary sources that are best left to the sound discretion of the trier of fact. Hence it is exceedingly rare for a negligence case ... to be resolved on summary judgment"); *cf. Paraskevaides v. Four Seasons Washington,* 292 F.3d 886, 893 (D.C. Cir. 2002) (stating that **"[w]hether a plaintiff is contributorily negligent is usually a question for the jury"**) (citation omitted).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

*Wilson v. Prudential Fin.*, No. CIV.A. 03-2313(RMU), 2004 WL 2451412, at *5 (D.D.C. Oct. 18, 2004) (emphasis added).

This is not a case in which all reasonable persons must agree with WMATA's argument that Ms. Zuk acted negligently and thereby contributed to the Metrobus hitting her. As the District of Columbia Court of Appeals has explained:

> A reasonable person need not go through life timidly, seeking to guard against that which is only remotely probable and not to be feared except by the overly cautious.
>
> "As a general proposition, a plaintiff is not bound to anticipate negligent conduct on the part of others. Rather, he may assume that others will fulfill their duties."

*Stager v. Schneider*, 494 A.2d 1307, 1311 (D.C. 1985) (quoting J. DOOLEY, MODERN TORT LAW § 4.18 at 115 & n. 1 (1982)). As described above, (*supra*, Sec. I), Ms. Zuk was bicycling in a perfectly ordinary, careful manner when WMATA's bus driver, without sounding his horn or offering any other warning, recklessly tried to blow past her, only inches from her body, and instead hit her. As she rode through the intersection in plain view of the bus driver, she— like every roadway user—had a right to assume that the bus driver would obey the traffic laws (such as those defining how to safely pass vehicles generally or bicycles specifically). Because—at a minimum—it cannot be said that all reasonable jurors would deem Ms. Zuk to have been contributorily negligent, WMATA is not entitled to summary judgment.

## VI. Alternatively, even if the Court were to find Ms. Zuk to have been contributorily negligent as a matter of law, it would not be appropriate to engage in the weighing of the parties' relative negligence that is the province of the jurors.

As WMATA observes, with regard to its contributory negligence affirmative defense, it bears the burden of proving not only that Ms. Zuk was guilty of some *de minimis* degree of

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

negligence, but that she was **more negligent** than WMATA's bus driver.  (Def.'s MSJ at 4-5 (citing D.C. Code § 50-2204.52)).  Only then can WMATA escape liability for its bus driver's negligence.

In support of its argument, WMATA makes such implausible statements as "The record lacks any evidence of negligence by the WMATA Metrobus operator" and "The bus operator could not have taken any action to prevent the collision."  (Def.'s MSJ at 8, 9).  Those statements have by now been thoroughly debunked.  (*See supra*, Sec. I).

Further, if determining the existence of contributory negligence tends to lie uniquely within the province of the finders of fact, then weighing the relative reasonableness or non-reasonableness of two different parties' actions against each other is that much more a question for the jurors.  While WMATA gamely found five cases in which the negligence of the plaintiff was deemed so egregious as to justify a departure from the general rule, the general rule has long been recognized.  *See, e.g.*, *McDonald v. Hickman*, 252 Ark. 300, 300, 478 S.W. 2d 753, 754 (1972) ("It is not our province to compare the negligence of the litigants when fair-minded men might reach different conclusions in the matter."); *Keys v. Target Corp.*, No. 222CV01389APGDJA, 2024 WL 472502, at *3 (D. Nev. Feb. 7, 2024) ("Generally, weighing the parties' comparative negligence is a question of fact for the jury."). The Supreme Court of South Dakota explained the analysis well:

> In this case, however, it would appear to us that this is a singularly inappropriate case for granting summary judgment, in total or in part.  It is a negligence case and as we said in *Wilson v. Great Northern Railway:*
>
>> Summary judgment is generally not feasible in negligence cases because the standard of the reasonable man must be applied to conflicting testimony.  Issues of negligence and such related issues as wanton or contributory negligence are

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

22

> ordinarily not susceptible of summary adjudication either for or against a claimant and should be resolved by trial in the ordinary manner....
>
> This court has repeatedly said that issues of negligence, contributory negligence, and the comparative extent thereof, and proximate cause are ordinarily questions of fact and it must be a clear case before a trial judge is justified in taking these issues from the jury.
>
> **We think that this admonition is particularly appropriate in comparative negligence cases.** In the first place, what advantage is summary judgment to either the court or the parties? Because of the requirement that the negligence of the decedent be compared with the negligence of Brisky, we see no diminution in the evidentiary burdens. It would appear that the trial court might well wait until the evidence is in and appropriate motion made for directed verdict.

*Theunissen v. Brisky*, 438 N.W.2d 221, 223 (S.D. 1989) (emphasis added). In sum, because genuine disputes of material fact persist, from which reasonable people could draw different conclusions, WMATA has not carried its burden of proving that Ms. Zuk was contributorily negligent **at all** as a matter of law. WMATA certainly has not carried its burden of proving that Ms. Zuk was **more negligent** than WMATA's bus driver.

## VII. Conclusion

For the reasons set forth above, Ms. Scott respectfully requests that the Court DENY Defendant's Motion for Summary Judgment.

Respectfully submitted,

REGAN ZAMBRI LONG PLLC

By:  /s/ *Christopher J. Regan*
     Patrick M. Regan            #336107
     pregan@reganfirm.com
     Christopher J. Regan     #1018148

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

cregan@reganfirm.com
1919 M Street, N.W., Suite 350
Washington, D.C. 20036
PH:  (202) 463-3030
FX:  (202) 463-0667
*Counsel for Plaintiff*

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030