**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAROL WILD SCOTT** | : |
| **Plaintiff,** | : |
| v. | :  Case No. 22-cv-00601 (CRC) |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | : |
| | : |
| **Defendant.** | |

## I. Plaintiffs' Responses to Defendant's Statement of Undisputed Material Facts

1. On April 24, 2022, at 12:42 p.m., WMATA Metrobus #4488 was stopped at a red light, facing eastbound on U Street NW at the intersection with 14th Street NW in Washington, D.C. (Pl's. Compl. ¶¶ 10–11; *see also* Ex. 1, WMATA closed-circuit television ("CCTV") footage, at 12:42:34; Ex. 2, Miner Declaration.)

   **Response:** Undisputed.

2. Plaintiff Jessica Zuk passed the stopped Metrobus and approached the intersection, stopping at the red light ahead of the bus. (Pl.'s Compl. ¶ 12; *see also* Ex. 1, Cam. 8 at 12:42:34–12:42:38; Cam. 1 at 12:42:40–12:42:45.)

   **Response:** Undisputed.

3. She stopped at the right side of the intersection. (*Id.,* Cam. 1 at 12:42:40-12:42:45.)

   **Response:** Undisputed.

4. When the light turned green, Ms. Zuk began pedaling forward. (*Id.,* Cam. 1 at 12:43:12.)

   **Response:** Undisputed.

5. Simultaneously, the Metrobus also moved forward within its lane of travel. (*Id.*)

   **Response: Disputed, but only to the extent that, as seen in the video, the Metrobus begins accelerating slightly after Ms. Zuk begins pedaling forward. (Ex. 1, Forward Facing Camera, at 12:43:13).**

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

- 1 -

6. Ms. Zuk steered her bicycle outside the travel lane to the right. (*Id.,* Cam. 1 at 12:43:15.)

**Response:** **Disputed. There is no marked "travel lane" in the intersection; Ms. Zuk pedaled forward, across the intersection, and the fact that she was traveling forward and intended to continue doing so, eastbound on U Street, was apparent to any reasonably careful driver, let alone a professional bus driver. (Ex. 1 at 12:43:13-21).**

7. She continued forward outside the travel lane. (*Id.,* Cam. 1 at 12:43:15-12:43:21.)

**Response:** **Disputed. There is no marked "travel lane" in the intersection; Ms. Zuk pedaled forward, across the intersection, and the fact that she was traveling forward and intended to continue doing so, eastbound on U Street, was apparent clear to any reasonably careful driver, let alone a professional bus driver. (Ex. 1 at 12:43:13-21).**

8. The Metrobus remained within its lane. (*Id.,* Cam. 1 at 12:43:11–12:43:21.)

**Response:** **Disputed. There is no marked "lane" in the intersection. (Ex. 1 at 12:43:13-21).**

9. As the Metrobus passed Ms. Zuk to her left, she was still outside the travel lane. (*Id.,* Cam. 1 at 12:43:18 – 12:43:21; *see also* Cam 3 at 12:43:20 – 12:43:21.)

**Response:** **Disputed. There is no marked "lane" in the intersection. (Ex. 1 at 12:43:13-21). Also, the Metrobus never "passed" Ms. Zuk at all; more accurately, the Metrobus driver gunned the engine and tried to blow past Ms. Zuk; however, only the front ever passed her; the rear of the Metrobus hit her. As the bus moved past her, Ms. Zuk was in the same lane as the bus, as more thoroughly discussed below, in response to Fact No. 10.**

10. The front of the Metrobus passed her completely while she remained outside the lane as seen below at 12:43:21 in Camera 3:

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

- 2 -

- 3 -



**Response:** Disputed. Screenshots do not do justice to the recklessness of the Metrobus driver's actions with respect to the safety of the bicyclist ahead of him, but the fact of the matter is that WMATA's own video footage clearly shows that Ms. Zuk was IN the lane, not outside it, even at the moment WMATA chooses to focus on here (12:43:21). In the frame immediately before the one WMATA chose to present to the Court, Ms. Zuk's front tire is visible, and it is plainly IN the lane. The blue arrow indicates the bottom of Ms. Zuk's tire (in other words, where she was on the roadway), while the red box shows the white line dividing the parking lane from travel lanes.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

- 3 -





**(Ex. 2, Front Door Camera Screenshot at 12:43:21; Ex. 1 at 12:43:21).**

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

11. After the front of the Metrobus had passed her, Ms. Zuk steered her bicycle toward the lane, attempting to maneuver between the bus and parked cars while the bus was traveling straight at 15 mph. (*Id.,* Cams. 3 & 6 at 12:43:22.)

**Response:     Disputed.  With respect to Ms. Zuk's position on the roadway and WMATA's attempt to characterize her actions as an attempt to squeeze between cars and the Metrobus despite the relative positions and speeds of the Metrobus and the bicycle, disputed on the same grounds set forth in response to Fact No. 10, above.  Further disputed as to the speed of the bus.  At impact, the Metrobus was traveling at 20 mph.  (Ex. 9, Schorr Report, at 2).  Further disputed as to its characterization of Ms. Zuk's actions on the grounds that Ms. Zuk did not "attempt to maneuver between the bus and parked cars"; rather, by the time Ms. Zuk could even have seen the bus enter her peripheral vision, it was too late—there was nothing she could do to avoid being hit by the bus.  As expert safety engineer and crash reconstructionist Justin P. Schorr, Ph.D., explained:**

> **While the Metrobus operator had 36 seconds to view Ms. Zuk, the Metrobus did not become a hazard to Ms. Zuk until the bus was in motion and within her field of view. Here, the earliest opportunity Ms. Zuk had to view the bus (albeit in her peripheral vision) would have been approximately 1.0 seconds prior to impact when the front of the bus was approximately aligned with her torso (timestamp 12:43:21.40, Channel 3). Given that this is less time than a typical daytime perception plus reaction time (1.5 seconds), Ms. Zuk, or any reasonably prudent cyclist, would not have been provided sufficient time and distance to perceive and react to (let alone avoid) the hazard created by the bus.**

**(Ex. 9, Schorr Report, at 2).**

12. Ms. Zuk's left arm made contact with the moving Metrobus, causing her to fall to the ground. (*Id.,* Cams. 6 & 9 at 12:43:23–12:43:24.)

**Response:     Disputed.  As can be seen in the "Curbside Rearward" camera footage, the Metrobus overtakes Ms. Zuk from behind at a significantly higher speed than she is traveling and hits her left arm and handlebar, knocking her to the ground and nearly running her over with its rear tires in the process.  (Ex. 3, Curbside Rearward Camera, at 12:43:13-12:43:33).**

13. The Metrobus came to a stop eight seconds later. (*See generally id.,* at 12:43:31.)

**Response:     Disputed.  In WMATA's video footage, the Metrobus does not stop moving until 12:43:33.  (*See, e.g.*, Ex. 3 at 12:43:13-12:43:33).**

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

- 5 -

14. Throughout the incident, Ms. Zuk was holding a cell phone and wearing earbuds in both ears. (*Id.,* Cam. 8 at 12:42:37; and Cam. 6 at 12:43:22.)

**Response:**   **Undisputed.**

15. The cell phone and earbud are clearly visible in Plaintiff's right hand and right ear at 12:42:37 in Camera 8 as seen below:

**Response:**   **Disputed on the ground that whether something is "clearly visible" or not is merely the impression or argument of counsel. But No. 14 is admitted.**

16. The other earbud is clearly visible in Plaintiff's left ear at 12:43:22 in Camera 6 as seen below:

**Response:**   **Disputed on the ground that whether something is "clearly visible" or not is merely the impression or argument of counsel. But No. 14 is admitted.**

## II.   Plaintiff's Statement of Disputed Material Facts

Pursuant to Rule 56, Plaintiff submits the following statement of material facts as to which Plaintiff contends there is no genuine issue:

17. As the Metrobus rapidly bore down on Ms. Zuk from behind, the bus driver did not sound his horn or do anything else to let the cyclist know the bus was there. (Ex. 5, Morgan Dep., at 55:2-5).

18. WMATA suspended the bus driver for three days due to his bus having struck Ms. Zuk as it did. (Ex. 5 at 55:10-13).

19. District of Columbia law requires as follows: "A person driving a motor vehicle shall exercise due care by leaving a safe distance, but in no case less than 3 feet, when overtaking and passing a bicycle."  18 DCMR § 2202.10.

20. WMATA's own bus operation Procedures require as follows:

> **6.6. Passing A Bicyclist (Figure 25-4)**
>
> 6.6.1. A bicyclist is permitted to occupy the entire width of the lane just as any motor vehicle would.
>
> 6.6.2. Never attempt to pass a bicyclist in the same lane.
>
> 6.6.3. When it is necessary to pass a bicyclist, the operator must change lanes and maintain three feet clearance while passing, (use more clearance if needed) and approach the bicyclist with extreme caution.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

> 6.6.4. Protect the cyclist and do not create space that would allow another vehicle to come between the bus and the cyclist.
>
> 6.6.5. If cyclist speeds up or moves towards the bus, slow down and/ or stop if necessary.

(Ex. 6, WMATA Bus Procedure: Bicyclists, at § 6.6).

21. WMATA Procedure BTRA-BTOP-PRO06-00, "Changing Lanes, Passing, and Being Passed," also requires that when a Metrobus driver intends to attempt to pass another vehicle (which WMATA has testified includes cyclists[1]) provides in relevant part as follows:

> **6.4. Passing Vehicles Moving in the Same Direction**
>
> 
>
> FIGURE 6-2: PASSING VEHICLES MOVING IN THE SAME DIRECTION
>
> 6.4.1. Tap the horn as you pass the vehicle to warn the driver you intend to pass.

(Ex. 7, WMATA Bus Procedure: Passing, at § 6.4 (bold in original)).

22. Ms. Zuk was not using her earbuds at the time the Metrobus hit her.

> Q. Incidentally -- just another question -- when you were operating your bike that day, did you by any chance have any AirPods in your ear?
>
> A. I had an AirPod in my ear, yes, but I was not listening to any music. I was on my way home so I wasn't listening to anything at that moment. But I did have an AirPod in, I believe, my right ear.
>
> Q. Your right ear. What about your left ear?
>
> A. I believe I was wearing both, but I know that one of them fell out during the collision.
>
> Q. Okay. But prior to the collision, you had AirPods in both ears?
>
> A. Yes.

---

[1] Ex. 8, WMATA Dep. (Coppage) at 18:6-19:5.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

- 7 -

> Q. And was that to listen to music?
>
> A. Typically, yes. But on my journey, I had received a phone call a little bit earlier on. So at that moment, I was not listening to music.
>
> Q. Okay. Were you talking?
>
> A. No.
>
> Q. At the time of the collision, were you talking on your -- were you talking at the time of the collision?
>
> A. Not to my recollection. I wasn't on the phone. So hopefully not chatting with myself, but you never know. But no, not to my recollection. No chatting.
>
> **Q. The reason I ask the question is -- what I'm trying to get at is, there would have been nothing to impair your ability to hear on the day in question -- of the accident, correct?**
>
> **A. Just outside of the normal sounds of the city. That was probably what I was hearing.**

(Ex. 10, Zuk Dep. at 14:6-15:17).

23. By the time Ms. Zuk could have seen the bus enter her peripheral vision, it was too late—there was nothing she could do to avoid being hit by the bus. As expert safety engineer and crash reconstructionist Justin P. Schorr, Ph.D., explained:

> While the Metrobus operator had 36 seconds to view Ms. Zuk, the Metrobus did not become a hazard to Ms. Zuk until the bus was in motion and within her field of view. Here, the earliest opportunity Ms. Zuk had to view the bus (albeit in her peripheral vision) would have been approximately 1.0 seconds prior to impact when the front of the bus was approximately aligned with her torso (timestamp 12:43:21.40, Channel 3). Given that this is less time than a typical daytime perception plus reaction time (1.5 seconds), Ms. Zuk, or any reasonably prudent cyclist, would not have been provided sufficient time and distance to perceive and react to (let alone avoid) the hazard created by the bus.

(Ex. 9, Schorr Report, at 2).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030

- 9 -

                Respectfully submitted,

                REGAN ZAMBRI LONG PLLC

      By:  **/s/ *Christopher J. Regan***
                Patrick M. Regan     #336107
                pregan@reganfirm.com
                Christopher J. Regan   #1018148
                cregan@reganfirm.com
                1919 M Street, N.W., Suite 350
                Washington, D.C. 20036
                P<small>H</small>:  (202) 463-3030
                F<small>X</small>:  (202) 463-0667
                *Counsel for Plaintiff*

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, DC 20036

202-463-3030